247 F.2d 809
 114 U.S.P.Q. 382
 IOWA FARMERS UNION (Formerly Farmers Educational and
Co-operative Union of America, Iowa Division), and Iowa
Union Farmers Association, and Fred W. Stover, Charles
Shearn, George Wharam, Betty Lownes, Lee Harthan, Elmer
Gustafson, LeRoy Martin, George Rose, Gustav Mohr, Lester
Muhlenbruch, Emil Ronfeldt, Annis Thorson and Lynn Potter, Appellants,
v.
FARMERS' EDUCATIONAL AND CO-OPERATIVE UNION of American, A
Corporation, Appellee.
 No. 15635.
 United States Court of Appeals Eighth Circuit.
 Aug. 5, 1957.
Rehearing Denied Sept. 30, 1957.
 
 James R. McManus, Des Moines, Iowa (George Cosson and Clarence Cosson, Des Moines, Iowa, were with him on the brief), for appellants.
 Frederic M. Miller, Des Moines, Iowa (Sherwin J. Markman, Des Moines, Iowa, and Charles F. Brannan, Denver, Colo., were with him on the brief), for appellee.
 Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.
 WOODROUGH, Circuit Judge.
 
 
 1
 This action was brought by Farmers' Educational and Cooperative Union of American, a Texas corporation, against Farmers Educational and Cooperative Union of America, Iowa Division, and Service Association, a corporation, and others, to enjoin the defendants from an alleged infringement of three of plaintiff's trade marks, all of which are registered on the Principal Register of the United States Patent Office. The trade Marks are, (1) a symbol and service mark, consisting of a plow, rake and hoe, surrounded by a circle, (2) a collective mark for goods, consisting of the words, 'Union Farmer', used for newspapers published by plaintiff and its divisional organizations, and (3) a service mark, consisting of the words 'Farmers Union', used by plaintiff in the sale and advertisement of services.
 
 
 2
 On the trial of the case the court held that federal jurisdiction was conferred by the Lanham Act of 1946, 15 U.S.C.A. 1051 et seq., and rendered judgment for plaintiff in accord with the opinion reported at D.C., 141 F.Supp. 820 and findings of fact and conclusions of law which are appended.[1]
 
 The injunction ordered is also appended.[2]
 
 3
 It appears from the record that there are three old and generally well known farmers organizations in the United States, namely, the 'Farm Bureau', 'The National Grange' and the 'Farmers Union' which have endured a long time more or less in the public eye and the plaintiff in this action is the last named, to-wit: 'Farmers Union.' Its general plan is and has always been to have local unions formed which are federated with county units and these with a state organization and when there has been due compliance with its requirements, it issues a charter to the state organization, and in that way every individual member of a local union becomes a member of the national Farmers Union and entitled to share in its many and veried activities and advantages. Since 1906 the national organization has actively sought and enlisted members, organized farmer cooperatives, published numerous books and pamphlets and a weekly newspaper named 'National Union Farmer'. Many of its component unions under the authority of their respective charters have for many years published newspapers with 'Union Farmer' as part of the name completed with the name of the state or locality.
 
 
 4
 Plaintiff's function in connection with its 18 state divisions and in the 29 states in which it has members is to foster and maintain local and state organizations and through organization aid in improving conditions of life of the farmers. The various agricultural publications, the weekly newspaper and the Washington news letter are sent to some 375,000 farm families in the United States on a paid subscription basis and the record shows the budget for the weekly newspaper to be in the neighborhood of $70,000 a year. In terms of all publications issued to members bearing the name 'Farmers Union' the cost is in excess of one million dollars a year.
 
 
 5
 The first local Farmers Union in Iowa was chartered on January 25, 1915, and between January 20, 1915, and September 24, 1917, a total of 236 local unions and 8 County unions were chartered in Iowa. The charter of the defendant corporation was granted in 1917, and conferred upon it the right to use the trade marks and name 'Iowa Farmers Union' or 'Farmers Union in Iowa' in soliciting funds and members and identifying itself and its activities as a component division of the plaintiff. It always availed itself of that right and so held itself out. In March of 1954, its charter was legally revoked by plaintiff as was conceded on the trial and all rights under it were withdrawn.
 
 
 6
 Notwithstanding the revocation, the individual Iowa defendants and through them, the Iowa organizations have continued to carry on the same activities under the name 'Iowa Farmers Union' or 'Farmers Union in Iowa' and to use the same trade marks as they did before the revocation. They caused a new Iowa corporation to be organized, bearing the name by which the plaintiff is commonly called and they carried on as before. They admit they have no right to use the registered symbol and service mark consisting of the plow, hoe and rake belonging to plaintiff and will desist from such use, but they admit they are using and will use the plaintiff's registered trade marks, 'Union Farmer' and 'Farmers Union'. They appeal from the decree of injunction rendered against them forbidding them to do so.
 
 
 7
 Although the court's findings of fact were extended and comprehensive, appellants assert insufficiency of evidence only as to the paragraphs of the findings numbered five, ten, twelve and thirteen.
 
 
 8
 In paragraph five the court found that defendants' use of the marks 'Union Farmer' and 'Farmers Union' was in direct competition with the plaintiff and we think the finding is fully supported by the evidence. From 1917 to 1954 defendant Iowa Farmers Union operated under a charter from plaintiff as an integral part of plaintiff as plaintiff's Iowa division. In March, 1954, the charter was lawfully revoked as conceded and since the revocation the individual defendants have operated the corporations the same as before, but without contact with plaintiff. Plaintiff is conducting a campaign to reestablish its Iowa division and replace the disfranchised organization and in direct opposition defendants conduct their campaign for members. Defendants continue to publish the Iowa Union Farmer the same as they did when they were members of the Iowa Division of plaintiff. The plaintiff has operated on a national scale for fifty years. It publishes the newspaper National Union Farmer and has State organizations in 18 of the 29 States in which it has members and at least nine of these publish newspapers using plaintiff's mark 'Union Farmer.' Defendants in using the name Iowa Farmers Union not only use plaintiff's registered mark 'Farmers Union', but also use a name that is identical with the name by which plaintiff's State organizations are commonly known as well as the name by which defendant was known when it belonged to and constituted the Iowa Division of the plaintiff. Obviously the plaintiff and defendants are engaged in the same line of endeavor by the same kind of activities in the same field and defendants' use of plaintiff's mark is in direct competition with plaintiff as found by the court.
 
 
 9
 In paragraph ten of the findings, the court found that defendant Iowa Union Farmer Association publishes a newspaper under the name Iowa Union Farmer, whose mark resembles those of plaintiff's state organization newspapers. Such publication was admitted in defendant's pleading. The name of plaintiff's national newspaper is National Union Farmer. Plaintiff's Kansas Division publishes a newspaper named the 'Kansas Union Farmer'; Illinois, the 'Illinois Union Farmer'; Arkansas, the 'Arkansas Union Farmer'; Indiana, the 'Indiana Union Farmer'; the Rocky Mountain Division, the 'Rocky Mountain Union Farmer'; North Dakota, the 'North Dakota Union Farmer'; Nebraska, the 'Nebraska Union Farmer'; South Dakota, the 'South Dakota Union Farmer'; Oklahoma, the 'Oklahoma Union Farmer' and Virginia, the 'Virginia Union Farmer.'
 
 
 10
 The court's finding of fact No. 10 that the defendant, Iowa Union Farmer Association publishes a newspaper under the name of 'Iowa Union Farmer', whose mark resembles those of plaintiff's state organization newspapers is supported by and in accord with the evidence.
 
 
 11
 In paragraph 12 the court found as follows:
 
 
 12
 '12. Defendants' activities in Iowa have affected plaintiff's interstate activities as well as in Iowa and defendants' activities have received some national publicity. The use by the defendants of the marks, 'Union Farmer' and 'Farmers Union' is in direct competition with the plaintiff. The types of service offered and the names used are so similar that there is bound to be confusion. The evidence shows that confusion has occurred and demonstrates that confusion will reoccur. Defendants' activities adversely and seriously affect plaintiff's national organization and its nationwide program.'
 
 
 13
 Following the cancellation of the charter of its Iowa Division, the plaintiff employed one Maurice O'Reilley as organizing director for Iowa, who testified for plaintiff on the trial concerning the confusion that exists between the Iowa defendants and the plaintiff National Farmers Union. He said many Iowa farmers said they did not want to join any Farmers Union until it was determined that there was only one, that many have shown they did not know which organization was which and whether or not the old group was still affiliated with the national organization; that some knew there were two organizations and some did not and some did not distinguish between the two. Some attending meetings called by O'Reilley have said that they appear to have joined the wrong union. The defendants are asserting the right to use the plaintiff's registered marks and claiming that the name Farmers Union belongs to the defendant Iowa Farmers Union and not to the plaintiff. The confusion exists and is inevitable and will continue to result. The same types of service are offered by both sides under the names that belong to the plaintiff alone and the defendants infringe in the field of activity for which plaintiff's marks are registered. Defendants' activities in Iowa impede and hinder the reorganization of plaintiff's Iowa division as an integral part of its national organization. The Iowa part is vital and essential as a part of the national organization and defendants' activities there directly and materially affect plaintiff's national operation. Finding No. 12 is substantially supported and in accord with the evidence.
 
 
 14
 The trial court's finding of fact No. 13 is as follows:
 
 
 15
 '13. Defendants failed to produce any evidence that plaintiff's trade marks are invalidly registered. The evidence shows that plaintiff's marks have acquired a secondary meaning and the Patent Office did not err in so determining. The evidence of Iowa corporations using the words, 'Farmers' and 'Union' demonstrates that all of said corporations, some of whom are licensees of the National Farmers Union, dispense goods and services different from plaintiff so that they are not in competition with plaintiff and their existence is no aid to defendants.'
 
 
 16
 The Lanham Act provides that five years use of a mark may be considered as evidence of its having acquired a secondary meaning. The evidence here shows that plaintiff's marks 'Farmers Union' has been used by plaintiff in operating on a national scale since 1906 and that plaintiff has used the service mark 'Union Farmer' continuously since 1911. The only evidence offered by defendants in respect to the secondary meaning in plaintiff's marks was the stipulation that many corporations in Iowa had Farmers Union in their names, but all of them showed by their corporate names that they were mercantile corporations engaged in activities dissimilar to those of the plaintiff.
 
 
 17
 This finding and each and all of the findings were in accord with the evidence.
 
 
 18
 Turning to the conclusions of law.
 
 
 19
 In its conclusions numbers 3 and 4, the court stated that defendants were infringing plaintiff's registered marks in such a manner that confusion has resulted and is bound to reoccur unless enjoined and that defendants' activities have affected plaintiff's interstate activities and have received some national publicity. That defendants' use of plaintiff's registered marks 'Union Farmer' and 'Farmers Union' was in direct competition with the plaintiff was reiterated as a conclusion of law.
 
 
 20
 It being conceded that intra-state activities of the defendants, whose actions have a substantially adverse effect upon interstate commerce, comes within the protection of the Lanham Act, the court's declarations in these conclusions are clearly in accord with the Act. The last paragraph of Section 1127, Title 15 U.S.C.A., provides that the intent of the Lanham Act includes the intent 'to protect persons engaged in such commerce against unfair competition.' Section 1114, Title 15 U.S.C.A., provides that 'any person who shall, in commerce, (a) use, without the consent of the registrant any reproduction * * * of any registered mark in connection with the sale * * * or advertising of any goods or services on or in connection which such use is likely to cause confusion of mistake * * * or (b) reproduce * * * any such mark and apply such reproduction * * * in connection with the sale in commerce of such goods or services, shall be liable to a civil action by the registrants for any or all of the remedies hereinafter provided in this chapter * * *.' The provisions of said Sections 1127 and 1114 are interpreted in the Commentary, page 268, Title 15 U.S.C.A., as follows:
 
 
 21
 'The Supreme Court has held that an activity which is local in its nature may be regulated by Congress if it exercises substantial economic effect on interstate commerce. It is therefore apparent that purely intrastate uses may come under the provisions of the Act if they have a substantial economic effect on interstate, territorial or foreign commerce.'
 
 
 22
 The pronouncement last above quoted has been announced and applied repeatedly by the Federal Courts. The following cases are illustrative: Bulova Watch Co. v. Steele, 5 Cir., 194 F.2d 567; Pure Foods v. Minute Maid Corp., 5 Cir., 214 F.2d 792; Stauffer v. Exley, 9 Cir., 184 F.2d 962; National T.B. Ass'n v. Summit County, etc., D.C., 122 F.Supp. 654; Cole of Calif., Inc., v. Collette of Calif., 79 U.S.P.Q. 267; Time, Inc., v. Life T.V. Corp., D.C., 123 F.Supp. 470; Mendes v. New England Dup. Co., D.C., 94 F.Supp. 558; Admiral Corp. v. Penco, Inc., D.C., 106 F.Supp. 1015, affirmed 203 F.2d 517.
 
 
 23
 When the charter of the plaintiff's Iowa division was cancelled the defendants were no longer authorized to use plaintiff's registered marks, but they have used them and admit they intend to continue. At one of his meetings, defendant Stover stated, 'Membership in the Iowa Farmers Union does not just mean that you belong to the Farmers Union, but that the Farmers Union belongs to you.' He plainly meant his hearers to understand that the name they were using was not the plaintiff's but belonged to the defendants' organization and that its members belong to the Farmers Union but not to plaintiff. Obviously defendants use the name in direct competition with plaintiff and infringe in the field of activity for which the marks are registered. It is material that defendants were formerly associated with plaintiff and are no longer so associated. The former association makes defendants' infringement and misuse of plaintiff's registered marks much more injurious to plaintiff than if the same wrong were committed by a stranger. The evidence shows clearly that defendants' conduct greatly increases the cost and difficulty plaintiff encounters in its undertaking to reestablish the Iowa division which is essential to its national organization and interstate operation.
 
 
 24
 The court's conclusion of law No. 1 states that plaintiff's registration of its three marks in the Principal Register of the Patent Office created prima facie evidence of the validity of the registration and of plaintiff's exclusive right to use said marks on the goods and services specified in the registrations and gave rise to the presumption that prerequisites to valid registration had been met; that defendants had failed to overcome plaintiff's prima facie case and that plaintiffs registered marks, to-wit: No. 557013, No. 566390 and No. 597624, are valid, subsisting and legally registered marks.
 
 
 25
 It is argued for appellants that the plaintiff's marks 'Farmers Union' and 'Union Farmer' are merely discriptive and generic terms and are not eligible for registration or exclusive appropriation and that the court erred in enjoining their use.
 
 
 26
 But the Lanham Act provides for the 'registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.' Section 1052(f), Title 15 U.S.C.A. The subsection further provides: 'The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.'
 
 
 27
 In 4 Callman 'Unfair Competition and Trade Marks,' 2124, Section 98.4(a), it is stated:
 
 
 28
 'A registrable mark under the Lanham Act must, of course, be capable of distinguishing the goods and services of the trade mark owner. Under the old Act, the acid test of the registrability of the mark was the primary or common meaning, and the mark was rejected if it consisted of a name or a descriptive or geographical term, no matter how famous it had become. The new Act, however, permits the registration of marks that have lost such primary meaning and have acquired a secondary significance, so as to symbolize the goods or services of a particular business and distinguish them.'
 
 
 29
 Not only does the Lanham Act provide that a mark which has acquired a secondary meaning can be registered and be entitled to full protection thereunder but it also contains a provision, which is new, that registration in the Principal Register of the Patent Office is prima facie evidence of valid registration of a mark. Subsection (b), Section 1057, Title 15 U.S.C.A., provides as follows:
 
 
 30
 '(b) A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.'
 
 
 31
 Subsection (a), Section 1115, Title 15 U.S.C.A., provides that registration of a mark in the Principal Register of the Patent Office, as provided by said chapter, 'shall be prima facie evidence of the registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the certificate, subject to any conditions or limitations stated therein.'
 
 
 32
 In interpreting the statutory provision above quoted, this Court, in the case of Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 8 Cir., 199 F.2d 407, 413, stated as follows:
 
 
 33
 'By subsection (b) of Sec. 7 of the Act of 1946 15 U.S.C.A. 1057(b), a certificate of registration of a mark on the principal register is made prima facie evidence of the validity of the registration, the registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods specified in the certificate, subject to any conditions and limitations stated therein. Therefore, when a mark is registered upon the principal register under the Act of 1946, the presumption arises that the statutory prerequisites to its valid registration have been met, i.e. (1) its dissimilarity to other registered marks for similar goods, (2) its secondary meaning, (3) its 'ownership' by the applicant, and (4) the applicant's exclusive right to use the trade-mark in commerce in connection with the goods specified.'
 
 
 34
 The above pronouncement has been repeatedly recognized and applied. The following cases are illustrative: Feil v. American Serum Co., 8 Cir., 16 F.2d 88; Weiner v. National Tinsel Mfg. Co., 7 Cir., 123 F.2d 96; Pastificio Spiga, etc., v. De Martini Macaroni Co., 2 Cir., 200 F.2d 325; Rolley, Inc. v. Younghusband, 9 Cir., 204 F.2d 209; James Heddon's Sons v. Millsite Steel & Wire Wks., 6 Cir., 128 F.2d 6; See also Nims, Unfair Competition and Trade Marks, 4th Ed. 1075, 1076.
 
 
 35
 The evidence herein shows that plaintiff's mark, 'Farmers Union,' has been used on a nation wide basis continuously since 1906. The only other two national organizations of farmers that have been in existence during that time are the Patrons of Husbandry, which is known as the National Grange, and the American Farm Bureau Federation, which is usually known as the Farm Bureau. The record is undisputed that no organization of farmers, other than the plaintiff and its subordinate organizations, have used the name, 'Farmers Union' for the last fifty years. Obviously, the record shows that plaintiff's mark, 'Farmers Union' has acquired distinction and a secondary meaning.
 
 
 36
 In addition to the foregoing, Subsection (b) of Section 1057, Title 15 U.S.C.A., places the burden on the defendants to overcome the presumption arising from the registration of plaintiff's marks in the Principal Register of the Patent Office. This presumption includes the following: (1) the dissimilarity of plaintiff's marks to other registered marks for similar goods or services, (2) the secondary meaning of plaintiff's marks, (3) the ownership of the marks by plaintiff, and (4) plaintiff's exclusive right to use said marks in commerce in connection with the goods and services specified by the plaintiff in such registration. The trial court correctly held that the defendants had wholly failed to overcome this presumption.
 
 
 37
 We find no error in the court's conclusion of law No. 1.
 
 
 38
 Appellant also argues that the marks in question 'Farmers Union' and 'Union Farmer' if validly registered at all are at best weak marks entitled to only limited protection, but we find no error in the court's conclusion that the doctrine of hierarchy of marks is not applicable in this case. The plaintiff's marks have acquired a secondary meaning during the many years of their exclusive use by the plaintiff in the field of its operation and defendants' infringement of them in the same field is violative of the Act.
 
 
 39
 Appellants complain of the provision of the judgment which enjoins them 'from in any way attempting to compete with plaintiff in its use of said trade marks.' They argue that the court rested its jurisdiction on the Lanham Act and that that Act does not confer jurisdiction to protect from unfair competition. We do not sustain the contention.
 
 
 40
 Section 1127, Title 15 U.S.C.A., in the last paragraph thereof, provides that the intent of Congress, in adopting the Lanham Act, included intention to protect persons engaged in interstate commerce against unfair competition and Section 1114, Title 15 U.S.C.A., provides an adequate remedy to afford such protection.
 
 
 41
 In the Commentary, Title 15 U.S.C.A., page 269, it is stated:
 
 
 42
 'Federal Courts have jurisdiction of all actions srising under the Act, and for the first time their jurisdiction clearly extends to the interstate user of a mark which infringes a mark registered under the Federal Act, as well as to intrastate acts of unfair competition irrespective of the amount in controversy or diversity of citizenship.'[3]
 
 
 43
 In the present case, defendants' infringements are in interstate commerce within the intendment of the Lanham Act and we are in accord with the declaration of the ninth circuit in Stauffer v. Exley, 9 Cir., 184 F.2d 962, 963, 964:
 
 
 44
 'The trial court reached the conclusion that the Trade-Mark Act of July 5, 1946 does not confer original jurisdiction upon the district courts of the United States in actions for unfair competition in the absence of diversity of citizenship of the parties where there is no substantial and related claim under the copyright, patent or trade-mark laws joined with such actions. We do not agree.'
 
 
 45
 The Lanham Act of July 5, 1946, 15 U.S.C.A. 1051-1127 hereinafter referred to as the Act, provides comprehensively for federal registration and protection of trade marks, for protection of trade names and for remedies against unfair competition.
 
 
 46
 We are satisfied the court had jurisdiction and substantial grounds to protect ylaintiff from defendants' unfair competition under the Lanham Act.
 
 
 47
 We find no error in the proceedings, opinion, findings, conclusions or judgment of the trial court.
 
 
 48
 Affirmed.
 
 
 49
 On Consideration of Petition for Rehearing.
 
 
 50
 In the brief of appellants on their petition for rehearing they contend that this court has held erroneously that the Lanham Act conferred original jurisdiction upon District Courts in actions for unfair competition and they argue that the decision of this court is in conflict with the Second Circuit in American Auto Association v. Spiegel, 205 F.2d 771, the Third Circuit in L'Aiglon-Apparel v. Lana, Lobell, Inc., 214 F.2d 649 and the Fifth Circuit in Royal Lace Paper Works, Inc., v. Pest-Guard Products, Inc., 240 F.2d 814.
 
 
 51
 To avoid possibility of such construction of our opinion, it is ordered that the paragraphs of the Slip opinion herein of August 5, 1957, on page 18 thereof, beginning on the sixth line (247 F.2d 818, col. 2, line 29 to end of opinion) be deleted and that the following be inserted in lieu of the deleted matter:
 
 
 52
 Our holding in this case that the District Court had jurisdiction of the case under the Lanham Act and Title 28 United States Code, 1338(a) and (b) is based upon the fact that the unfair competition engaged in by the defendants as rightly found by the District Court, was substantially related to the proven infringement by defendants of the plaintiff's trademarks, which were duly registered under the Lanham Act.
 
 
 53
 Our decision is in accord with those of the Second, Third and Fifth Circuits in American Auto Association v. Spiegel, 2 Cir., 205 F.2d 771; L'Aiglon-Apparel v. Lana, Lobell, Inc., 3 Cir., 214 F.2d 649 and Royal Lace Paper Works, Inc., v. Pest-Guard Products, Inc., 5 Cir., 240 F.2d 814.
 
 
 54
 Defendants' wrongful use of plaintiff's registered trademarks in its competition with plaintiff was itself unfair competition by defendants. American Auto Association v. Spiegel, supra. It had substantial economic effect upon plaintiff's national interstate business and the District Court had jurisdiction and substantial grounds to protect plaintiff from defendants' infringement and unfair competition. We do not consider that this case raises the question and we do not hold that the Lanham Act would confer federal jurisdiction for unfair competition when there is no substantial related claim of infringement under the Act.
 
 
 55
 We find no error in the proceedings, opinion, findings, conclusions or judgment of the trial court. Affirmed.
 
 
 56
 The petition for rehearing is denied.
 
 
 
 [1]
 Findings of fact and conclusions of law filed June 13, 1956
 
 
 [1]
 This action was commenced on February 14, 1955, by the plaintiff, Farmers Educational and Cooperative Union of American, a Texas Corporation duly authorized to transact business in the State of Iowa, against the corporate and individual defendants, above named, to enjoin said defendants from infringement of three of plaintiff's trade marks, all of which are registered on the Principal Register of the United States Patent Office, to-wit: (1) a symbol and service mark, consisting of a plow, a rake and hoe, surrounded by a circle, (2) a collective mark for goods, consisting of the words, 'Union Farmer', used for newspapers published, and (3) a service mark, consisting of the words, 'Farmers Union', used by plaintiff in the sale and advertisement of services
 
 
 [2]
 It was stipulated that the Farmers Educational and Cooperative Union of America, Iowa Division, and Service Association, a corporation, is no longer in existence and was not in existence at the time of the commencement of this action, was not served and is not a party to these proceedings. The defendants, Farmers Educational and Cooperative Union of America, Iowa Division, and the Iowa Union Farmer Association, are both Iowa Corporations
 
 
 [3]
 Jurisdiction is invoked under the Lanham Act
 
 
 [4]
 The defendants conceded at the trial that plaintiff is entitled to the exclusive use of its symbol and service mark, consisting of a plow, a rake and hoe, surrounded by a circle and asserted that they are not using and will not use said symbol and service mark in the future. Defendants admit that they are using the other marks, namely, 'Union Farmer' and 'Farmers Union' and asserted that they intend to continue to use said marks unless restrained from so doing
 
 
 [5]
 The evidence is undisputed that the use by the defendants of the marks, 'Union Farmer' and 'Farmers Union' is in direct competition with the plaintiff
 
 
 [6]
 The plaintiff, a Texas corporation duly authorized to do business in Iowa, has been operating on a national scale since 1906. Its purposes, as stated in its articles of incorporation, include 'to protect its members engaged in the various branches of the farming industries, in their various pursuits, which in promoting and safeguarding their interests, is partially educational, fraternal, benevolent, and cooperative.'
 
 
 [7]
 In furtherance of its purposes aforesaid, plaintiff publishes and distributes a newspaper, various pamphlets and a Washington Newsletter, examples of which were introduced in evidence. Each of them displayed plaintiff's service mark, 'Farmers Union' and most of them displayed, in conjunction therewith, plaintiff's symbol, the plow, rake and hoe surrounded by a circle. The plaintiff's newspaper is published under the name of 'National Union Farmer' and has displayed therewith the aforesaid symbol. In 18 of the 29 States is which plaintiff has members it has set up State organizations and of these at least nine publish newspapers that use plaintiff's mark, 'Union Farmer'. The Kansas division of plaintiff has published its 'Kansas Union Farmer' continuously since 1911
 
 
 [8]
 The defendant, Farmers Educational and Cooperative Union of America, Iowa Division, was originally an unincorporated association located in Iowa, which, in December 1924 became a corporation pursuant to the laws of Iowa. On October 8, 1917, this defendant was issued a charter by the plaintiff whereby it became an integral part of the plaintiff in the State of Iowa, continuing to be such until 1954. In March, 1954, plaintiff revoked the charter of its Iowa Division and the legality of such revocation was conceded at the trial by the defendants
 
 
 [9]
 On September 24, 1955, subsequent to the filing of the complaint herein, this defendant, by amendment to its articles of incorporation, changed its name to Iowa Farmers Union. This new name is identical with the name by which plaintiffs state organizations are commonly, or colloquially, known, and hence is almost identical with the name by which said corporation was commonly, or colloquially, known before the Iowa Charter was revoked by plaintiff in 1954
 
 
 [10]
 The defendant, Iowa Union Farmer Association, publishes a newspaper under the name of 'Iowa Union Farmer', whose mark resembles those of plaintiff's state organization newspapers. Prior to the revocation of the charter of the defendant corporation by plaintiff, such publication was authorized by the then legally constituted Iowa Farmers Union and it continues to be so authorized by said organization
 
 
 [11]
 Plaintiff's service mark, the symbol, with the plow, the rake and the hoe, surrounded by the circle, was registered in the Principal Register of the Patent Office on November 4, 1952; plaintiff's collective mark for goods, 'Union Farmer', usually used for newspapers published by plaintiff and its divisional organizations, was registered in the Principal Register of the Patent Office on November 2, 1954; and plaintiff's service mark, 'Farmers Union', was registered in the Principal Register of the Patent Office on April 1, 1952
 
 
 [12]
 Defendants' activities in Iowa have affected plaintiff's interstate activities as well as in Iowa and defendants' activities have received some national publicity. The use by the defendants of the marks, 'Union Farmer' and 'Farmers Union' is in direct competition with the plaintiff. The types of service offered and the names used are so similar that there is bound to be confusion. The evidence shows that confusion has occurred and demonstrates that confusion will reoccur. Defendant's activities adversely and seriously affect plaintiff's national organization and its nation-wide program
 
 
 [13]
 Defendants failed to produce any evidence that plaintiff's trade marks are invalidly registered. The evidence shows that plaintiff's marks have acquired a secondary meaning and the Patent Office did not err in so determining. The evidence of Iowa corporations using the words, 'Farmers' and 'Union', demonstrates that all of said corporations, some of whom are licensees of the National Farmers Union, dispense goods and services different from plaintiff so that they are not in competition with plaintiff and their existence is no aid to defendants
 
 
 [14]
 Defendants' evidence on its asserted issue of 'unclean hands' is not clear. It seems to refer to the revocation of the charter of the Iowa division because the Iowa division did not see eye to eye with the national organization on political matters. Such actions have no intrinsic connection with the subject matter of this litigation having to do with interorganizational strife whereas the subject matter of the litigation is trade mark infringement
 The Court makes the following
 Conclusions of Law
 
 
 [1]
 Plaintiff's registration of its three marks aforesaid in the Principal Register of the Patent Office creates prima facie evidence of the validity of the registration and of plaintiff's exclusive right to use said marks on the goods and services specified in such registrations. Section 1057(b) Title 15, U.S.Code, expressly so provides. Accordingly the presumption arises therefrom that the statutory prerequisites to valid registration have been met, i.e. (1) Their dissimilarity to other registered marks for similar goods or services, (2) the secondary meaning of said marks, (3) their ownership by plaintiff, and (4) plaintiff's exclusive right to use said marks in commerce in connection with the goods and services specified by plaintiff. See Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., (8 Cir.) 199 F.2d 407, 413. Defendants have wholly failed to overcome plaintiff's prima facie case herein. Plaintiff's said Registered Marks, to-wit: No. 557,013, No. 556,390 and No. 597,624, are valid, subsisting and legally registered marks
 
 
 [2]
 This Court has jurisdiction under the Lanham Act (Sections 114 (1114) and 1121, Title 15, U.S.Code), to enjoin the infringement of plaintiff's said marks by the defendants herein
 
 
 [3]
 Defendants are infringing plaintiff's said registered marks in such a manner that confusion has resulted and is bound to reoccur in the future unless injunctive relief, prayed for by the plaintiff, is granted by this Court
 
 
 [4]
 Defendants' activities have affected plaintiff's interstate activities as well as plaintiff's activities in Iowa and defendants' activities have received some national publicity. The use by the defendants of the marks 'union Farmer' and 'Farmers Union' is in direct competition with the plaintiff
 
 
 [5]
 Defendants' half hearted issue of 'unclean hands' presents a purported defense which the Courts are reluctant to apply and will always scrutinize with a very critical eye. Coca Cola (Co.) v. Koke (Co.), 254 U.S. 143 (41 S.Ct. 113, 65 L.Ed. 189). The actions of plaintiff, of which defendants complain, have no intrinsic connection with the subject matter of this litigation. The contentions of defendants with reference to alleged 'unclean hands' are wholly without merit
 
 
 [6]
 Plaintiff is entitled to a permanent injunction, enjoining the defendants, both corporate and individual, from the use of plaintiff's service mark, 'Farmers Union', plaintiff's collective mark, 'Union Farmer', and plaintiff's service mark, the aforesaid symbol of a plow, a rake and a hoe surrounded by a circle. Bulova Watch Co. v. Steele (5 Cir.), 194 F.2d 567; Pure Foods v. Minute Maid Corp. (5 Cir), 214 F.2d 792, and Nat(ional) Tuberculosis Ass'n v. Summit County Tuberculosis & Health Ass'n, (D.C.), 122 F.Supp. 654
 
 
 [2]
 Judgment and Decree
 It is hereby Ordered, Adjudged and Decreed that the defendants, Iowa Farmers Union (formerly Farmers Educational and Cooperative Union of America, Iowa Division), Iowa Union Farmer Association, Fred W. Stover, Charles Shearn, George Wharam, Betty Lownes, Lee Harthan, Elmer Gustafson, LeRoy Martin, George Rose, Gustav Mohr, Lester Muhlenbruch, Emil Ronfeldt, Annis Thorson and Lynn Potter, and each of them, be and they are permanently enjoined from making any use whatever, directly or indirectly, of plaintiff's collective mark, 'Union Farmer', in connection with the printing, publication and distribution of any newspaper or like periodical, and from making any use whatever, either directly or indirectly, of plaintiff's service marks to wit: the words, 'Farmers Union', and the symbol, consisting of a plow, a rake and a hoe surrounded by a circle, in connection with the dissemination of information pertaining to farming and related industries, and particularly information in connection with cooperatives to aid the farmers in marketing his produce, information relating to educational and entertainment programs, for farmers and their families, information as to proposed legislation that directly or indirectly may affect those engaged in farming and related industries, and services to and for the farmer relating to storage of produce, the making of mortgages, loans, the brokerage of produce and livestock, the sale of insurance, and the servicing of farm equipment, and from in any way, directly or indirectly attempting to compete with the plaintiff in its use of said trade marks.
 It Is Further Ordered that Judgment be entered against the said defendants for the costs of this action.
 
 
 [3]
 Remainder of opinion deleted on consideration of Petition for Rehearing, see 247 F.2d 819, col. 1