Lloyd B. LYON, Quality Courts United, Inc., Appellants,

v.

QUALITY COURTS UNITED, Inc., Appellee.

No. 13061.

United States Court of Appeals Sixth Circuit.

Nov. 26, 1957.

Donal E. Hummer, Toledo, Ohio, and James E. Mitchell, Youngstown, Ohio (Osborne Mitchell, Mitchell, Mitchell & Reed, Youngstown, Ohio, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, on the brief), for appellants.

John J. Trenam, Tampa, Fla., and Raymond L. Crawford, Toledo, Ohio (LeRoy E. Eastman and Eastman, Stichter & Smith, Toledo, Ohio, Fowler, White, Gillen, Yancey & Humkey, Tampa, Fla., on the brief), for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

The defendants have appealed from a summary judgment enjoining them from using the plaintiff's trade marks and trade name to describe or advertise their business.[1] The following facts, as disclosed by the pleadings, exhibits and depositions filed in the district court, are undisputed.

The plaintiff, Quality Courts United, Inc., is a nonprofit membership corporation, organized in 1941 under the laws of Florida, with its principal office in that state. It has not been licensed to conduct its corporate activities in Ohio. Its entire revenue is derived from dues paid by its more than four hundred and fifty members, who operate motels in states east of the Mississippi River. Operating no independent business of its own, the plaintiff corporation confines its activities to furthering the co-operative interests of its members, by national advertising, the distribution of guide books listing the names of members' motels, the operation of a clearing house in connection with payments to members for advance reservations, and by a variety of similar functions.

Membership in the plaintiff corporation is obtained only through election by its board of directors. Membership is restricted to individual persons and is not assignable. To acquire and maintain membership in the corporation, owners or operators must maintain motels of high qualitative standards. To this end a careful inspection is made of the

---

1. The parties will be denominated as in the court below.

motel operated by each applicant for membership, and subsequent periodic inspections are made of members' motels. Approximately ten per cent of the members are expelled annually for failure to maintain the required standards.

The plaintiff is the owner of two registered trade marks for "travel guides issued periodically." These marks are affixed to the lists of motels distributed by the plaintiff. It also is the owner of two registered collective service marks for "providing lodging in tourist courts." Emblems displaying these latter marks are distributed without charge to each member for exhibition in connection with the advertising of his motel. One of the trade marks and one of the collective marks consists of the name of the plaintiff, "Quality Courts United Inc.," upon a circular background of distinctive design. These marks have been continuously used by the plaintiff in commerce since 1939 and were registered in the United States Patent Office in 1955.

One of the plaintiff's members prior to March, 1955, was Raymond White, who operated the Motel Dorma Dell at Norwalk, Ohio. At that time Mr. White sold his motel to one of the defendants, an Ohio corporation, then named "Motel Dorma Dell, Inc.," of which the other defendant, Lloyd B. Lyon, was an incorporator, director, and officer. At the time of the sale Mr. White advised the purchasers that under the by-laws of the plaintiff corporation membership automatically terminated upon the sale of the motel, and that the purchasers could not continue to use the plaintiff's name, unless a representative of the new management should be accepted as a member of the plaintiff.

Shortly after the purchase of the motel the individual defendant's father, Lloyd Lyon, applied for membership in the plaintiff corporation on an application form supplied by it at his request. The application, signed by Lyon, acknowledged that membership in the plaintiff corporation had not been automatically acquired by purchase of the Motel Dorma Dell, and recited his agreement to remove the name and emblem of Quality Courts United Inc. from all advertising matter used by the motel in the event his application for membership should not be accepted by the plaintiff's board of directors at its next meeting.

Mr. Lyon's application for membership was not acted upon at the next meeting of the plaintiff's board of directors, and was rejected at the following meeting in August, 1955. Mr. Lyon was promptly advised of this action in a letter from the plaintiff's secretary, which further requested him to eliminate from all Motel Dorma Dell advertising any material which might imply membership in the plaintiff corporation.

Instead of complying with this request, Lyon and the other directors of the corporate defendant proceeded under the law of Ohio to change its name from Motel Dorma Dell, Inc. to Quality Courts United, Inc., the exact corporate name of the plaintiff. They further proceeded to qualify the corporation as thus renamed to do business in the neighboring states of Indiana, West Virginia, and Pennsylvania, and wrote letters to the plaintiff's members in those states, advising them to discontinue any use of the name Quality Courts United, Inc.

The defendant corporation continued for a short time to use the plaintiff's collective service mark at the Motel Dorma Dell. Thereafter it substituted a sign which, like the service mark, displayed the name "Quality Courts United, Inc." against a circular background, but which lacked the distinctive border of the plaintiff's registered mark. It also continued to use the name "Quality Court" on its stationery, business cards, match covers, and other advertising material.

To enjoin this conduct the plaintiff brought the present action in the District Court for the Northern District of Ohio. The complaint also prayed for an accounting and monetary damages. The defendants filed an answer and counterclaim. Upon these pleadings, together with depositions and exhibits subsequently filed, the court entered a sum-

mary judgment granting the plaintiff injunctive relief.[2]

The defendants' primary contention here is that the district court was in error in entertaining this action. Their argument runs as follows: this case was essentially an action *ex contractu;* federal jurisdiction could therefore rest only upon diversity of citizenship of the parties; since the plaintiff had carried on corporate activities in Ohio without having been licensed by Ohio to do so, it was barred from maintaining this action in the courts of Ohio, and therefore also barred from suing in the federal court there.

■ If the defendants are correct in their position that the only valid basis for federal jurisdiction in this case is the diverse citizenship of the parties and the requisite jurisdictional amount, 28 U.S.C.A. § 1332, there is substantial merit in their contention that the district court should have dismissed the plaintiff's complaint. Ohio clearly requires a foreign nonprofit corporation to secure a license before exercising its corporate privileges in a continual course of transactions in Ohio.[3] Just as clearly Ohio has closed its courts to foreign nonprofit corporations which should have obtained such a license and have failed to do so.[4] Moreover, if the courts of Ohio were closed to this plaintiff, so also was the federal court in that state in a diversity of citizenship case. Woods v. Interstate Realty Company, 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. Thus, if the defendants' major premise is sound, the only doubtful issue would be the factual one of whether the plain-

2. The court's brief order provided "that the injunction as prayed for in paragraph 'b' in the prayer of the complaint may issue, and that the prayers in paragraphs 'c' and 'd' are sustained and compliance therewith ordered." Paragraphs (b), (c), and (d) of the complaint were as follows: "(b) That upon final hearing of this cause defendants be strictly and permanently enjoined and restrained from directly or indirectly describing their business on any billboard, highway or entrance sign, or in any printed matter, letterhead or advertising media of any nature or otherwise holding out to the public in any manner whatsoever as 'Quality Courts United, Inc.,' or as 'Quality Courts United' or as 'Quality Court,' or as 'Quality Motor Court,' or from using the word 'Quality' in any manner whatsoever in describing or advertising or holding out to the public the said Motel Dorma Dell or any other motel or similar place of lodging; the defendants be enjoined and restrained from using any descriptive words which are calculated, designed or have the effect of causing the general public or any portion thereof to believe that Motel Dorma Dell is a member of plaintiff or is endorsed or recommended by plaintiff, and that defendants be enjoined and restrained from in any manner harassing or threatening or continuing to harass and threaten plaintiff or any of its members, or claiming to any of plaintiff's said members that defendants have any right to use the name 'Quality Courts United, Inc.,' or any variation thereof.

"(c) That defendants be ordered to return to plaintiff forthwith all of plaintiff's emblems, signs and other property now in the possession of defendant.

"(d) That all of defendant's billboards, signs, advertising material and other written or printed matter bearing the name 'Quality Courts United, Inc.,' or 'Quality Courts United,' or 'Quality Court,' or 'Quality Motor Court,' or any similar name, be delivered up and destroyed."

3. Ohio Revised Code, § 1703.27 provides: "No foreign corporation organized not for profit shall exercise its corporate privileges in this state in a continual course of transactions until it has first procured from the secretary of state a certificate authorizing it to do so."

4. "The failure of any corporation to obtain a license under sections 1703.01 to 1703.-31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license." Ohio Revised Code, § 1703.29 (A). "Sections 1703.01 to 1703.31, inclusive, of the Revised Code governing foreign corporations for profit in respect to * * * penalties or forfeitures for transacting business without license * * * shall also apply to foreign corporations not for profit." Ohio Revised Code, § 1703.27.

tiff's activities in Ohio, including advertising and periodic inspections of the members' courts, constituted "a continual course of transactions" within the state. Cf. National Sign Co. v. Maccar Sales Co., Cuyahoga Cty. 1929, 33 Ohio App. 89, 168 N.E. 758; Clare & Foster, Inc., v. Diamond S. Electric Co., Erie Cty. 1940, 66 Ohio App. 376, 34 N.E.2d 284.

■ If the defendants' major premise is invalid, however, their entire argument collapses. If the court's jurisdiction in this case rested not on diversity of citizenship, but rather on its function as a national court to enforce a substantive right created by Congress, then any limitations which Ohio imposes on its courts would be irrelevant. Lisle Mills v. Arkay Infants Wear, D.C.E.D.N.Y. 1950, 90 F.Supp. 676; see Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. The plaintiff's complaint, although alleging diversity of citizenship and that the amount in controversy exceeded $3,000, exclusive of interest and costs, explicitly stated that "This action is brought under the tradename and trade-mark laws of the United States, U.S.C., Title 15. * * *" It is

of no moment that the complaint may also have stated a common law action for breach of contract, or that the plaintiff might have confined his invocation of federal jurisdiction to diversity of citizenship. " * * * [T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." The Fair v. Kohler Die & Specialty Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716; see Bell v. Hood, 1946, 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939.

It thus becomes necessary only to determine whether the facts alleged in the complaint actually constituted a claim within the jurisdiction of the federal court, independent of its diversity jurisdiction. We turn to consideration of that question.

The plaintiff's service marks for "providing lodging in tourist courts" were registered as collective marks in 1955 under the provisions of the Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1053, 1054.[5] The marks were almost textbook

5. "§ 1053. Service marks registrable

"Subject to the provisions relating to the registration of trade-marks, so far as they are applicable, service marks used in commerce shall be registrable, in the same manner and with the same effect as are trade-marks, and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks, except when used so as to represent falsely that the owner thereof makes or sells the goods on which such mark is used. The Commissioner may establish a separate register for such service marks. Applications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of trademarks. July 5, 1946, c. 540, Title I, § 3, 60 Stat. 429." 15 U.S.C.A. § 1053.

"§ 1054. Collective marks and certification marks registrable

"Subject to the provisions relating to the registration of trade-marks, so far as they are applicable, collective and cer-

tification marks, including indications of regional origin used in commerce, shall be registrable under this chapter, in the same manner and with the same effect as are trade-marks, by persons, and nations, States, municipalities, and the like, exercising legitimate control over the use of the marks sought to be registered, even though not possessing an industrial or commercial establishment, and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks, except when used so as to represent falsely that the owner or a user thereof makes or sells the goods or performs the services on or in connection with which such mark is used. The Commissioner may establish a separate register for such collective marks and certification marks. Applications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of trade-marks. July 5, 1946, c. 540, § 4, 60 Stat. 429." 15 U.S.C.A. § 1054.

examples of collective marks within the meaning of the statute, 15 U.S.C.A. § 1127.[6]

■ In order to state a claim for infringement, it was incumbent upon the plaintiff to allege facts showing that the defendants had used the mark or a reproduction or imitation (1) in commerce; (2) without consent; (3) in connection with the sale, offering for sale or advertising of services; (4) in a manner likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such services, 15 U.S.C.A. § 1114(1). The allegations of the complaint were clearly sufficient to show that the defendants had used the plaintiff's marks, without consent, in connection with the advertising and sale of services, and in a manner likely to deceive purchasers as to the source or origin of the services.

The defendants insist, however, that the complaint showed that their alleged infringement was solely in connection with an intrastate activity, the operation of the Hotel Dorma Dell, in Norwalk, Ohio, and that such use was not "in commerce," and therefore not within the reach of the federal statute.

■ Under the provisions of the Lanham Trade-Mark Act, however, it is not necessary that the infringing use itself be in interstate commerce. It is enough if the use has a substantial economic effect on interstate commerce. The Act provides that a mark shall be deemed to be used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C.A. § 1127. And, "the word 'commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C.A. § 1127. Since as a matter of Constitution-

al law it is now beyond question that Congress may regulate intrastate activities which substantially affect interstate commerce, Mandeville Island Farms v. American Crystal Sugar Co., 1948, 334 U.S. 219, 232–237, 68 S.Ct. 996, 92 L.Ed. 1328, it is clear that intrastate infringing use is within the provisions of the Act if it has a substantial economic effect upon interstate use by the mark's owner. Iowa Farmers Union v. Farmers' Educational & Coop. Union, 8 Cir., 1957, 247 F.2d 809, 815–816; Pure Foods v. Minute Maid Corp., 5 Cir., 1954, 214 F.2d 792, 795–796, certiorari denied 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, 966–967; National Tuberculosis Ass'n v. Summit County Tuberculosis & Health Ass'n, D.C.N.D.O.1954, 122 F. Supp. 654, 656–657; see also Commentary on the Lanham Trade-Mark Act, 15 U.S.C.A. pp. 268–269. Without question the plaintiff's complaint alleged an infringing use "in commerce" within the meaning of the statute. Facts showing the plaintiff's own use of its mark in interstate commerce were clearly set out, as were facts alleging a substantial economic effect upon that use resulting from the defendants' intrastate infringement.

■ It is apparent therefore that the complaint stated a substantial claim under the federal trade-mark laws, conferring jurisdiction upon the federal court independent of diversity of citizenship. The complaint also stated a claim of unfair competition which was closely related to the trade-mark claim, and of which the federal court therefore also had jurisdiction, irrespective of the diverse citizenship of the parties, 28 U.S.C.A. § 1338(b);[7] Iowa Farmers Union v. Farmers' Educational & Coop. Union, 8 Cir., 1957, 247 F.2d 809, 819; Tele-

6. "The term 'collective mark' means a trade-mark or service mark used by the members of a cooperative, an association or other collective group or organization and includes marks used to indicate membership in a union, an association or other organization." 15 U.S.C.A. § 1127.

7. "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." 28 U.S.C.A. § 1338 (b).

chron, Inc., v. Parissi, 2 Cir., 1952, 197 F.2d 757, 759–761; Schreyer v. Casco Products Corp., 2 Cir., 1951, 190 F.2d 921, 923–924, certiorari denied, 1952, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683. It follows that the plaintiff's failure to secure a license from the State of Ohio was not an impediment to the maintenance of this action in the federal court there.

That being so, we do not reach the question whether the Lanham Act itself confers independent federal jurisdiction of a claim for unfair competition affecting interstate commerce—a question not argued in this case, and one about which there is disagreement. Compare Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339, 341 and Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, with Royal Lace Paper Works, Inc., v. Pest-Guard Products, Inc., 5 Cir., 1957, 240 F.2d 814; L'Aiglon Apparel, Inc., v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649, 652, 654; and American Auto Ass'n v. Spiegel, 2 Cir., 1953, 205 F.2d 771, 774, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391. See Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 540 footnote 1, 545.

■ Finally, there is no merit in the defendants' contention that the district court was in error in entering a summary judgment. The depositions and exhibits filed in the district court left no genuine issues of material fact remaining as to the merits of this controversy. The defendants used a colorable imitation of the plaintiff's collective service mark, resulting in confusion as to the source of origin of the services offered by them. They were also guilty of unfair competition in holding out the Motel Dorma Dell as a member of the plaintiff corporation, by appropriating the name Quality Courts United, Inc. Both secondary meaning and actual deception were shown.[8] See Iowa Farmers Union v. Farmers' Educational & Coop. Union, 8 Cir., 1957, 247 F.2d 809; Quality Courts v. Quality Courts, D.C. M.D.Pa.1956, 140 F.Supp. 341; National Tuberculosis Ass'n v. Summit County Tuberculosis & Health Ass'n, D.C.N.D. O.1954, 122 F.Supp. 654, 657.

In oral argument the defendants relied heavily upon American Auto Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391. That decision is clearly differentiable. The court's opinion in that case does not indicate that collective marks or service marks were involved. Moreover, there was no showing there that the defendant used the plaintiffs' trade-marks on or in connection with goods sold, and no showing of a likelihood of confusion. See "Trade-Marks and Unfair Competition," 68 Harv.L. Rev. 814, 850 (1955).

The judgment of the district court is affirmed.

8. Lloyd B. Lyon testified by deposition as follows:

"Q. Now, do you personally come in contact with the patrons of the Dorma Dell? A. Yes, part of the time.

"Q. Do those people sometimes ask you to make reservations for them? A. Yes.

"Q. Do they ask you to make a reservation at a Quality Court? A. Yes.

"Q. What do you tell them? A. I try to get out the best way I can, it is very embarrassing, we tell them we can't do it.

"Q. Many of them do ask you to make reservations? A. Yes.

"Q. Do you understand when they ask you that question they believe you are a member of the Plaintiff corporation, don't you? A. I don't know what they have in mind, but they know we had been a Quality Court.

"Q. You give them to understand that you still are a Quality Court by your sign, don't you? A. We are a Quality Court, yes."