The **O M SCOTT & SONS COMPANY,** a foreign corporation, Plaintiff,

v.

Morton **SUROWITZ,** d/b/a Morton's Nursery Sales; Floyd Gasdick, d/b/a Shirley's Flower Shop; Duncan L. Gillis, d/b/a Duncanwyllo's Flowers; Louis Sloan, d/b/a Sloan Nursery; and Scot's Flower and 'Garden Center, Inc., Defendants.

Civ. A. No. 20692.

United States District Court
E. D. Michigan, S. D.
Sept. 25, 1962.

William Mazey (Rothe, Marston, Masey, Sachs & O'Connell), Detroit, Mich., Thomas A. Rothwell, Marysville, Ohio, for plaintiff.

Hicks G. Griffiths, Richard G. Eubank, Gabriel Glantz, Detroit, Mich., for defendants.

THORNTON, District Judge.

The complaint filed by plaintiff alleges trademark infringement and unfair competition. The background of the controversy as it was developed at the trial is important because our determination depends upon a viewing of the circumstances here present in their proper perspective. At first glance we seem to be confronted with a paradox. It appears on the surface that defendants are not literally infringing a trademark of plaintiff's, and that they cannot be guilty of unfair competition since they do not compete with plaintiff. Nevertheless, defendants' conduct is such that its effect is that of commercial sabotage of plaintiff's business in this immediate geographical area. The issue, therefore, becomes whether this conduct is actionable in whole or in part so as to entitle plaintiff to the injunctive relief it seeks, as well as to money damages if any have in fact been sustained. The background may be stated simply.

Plaintiff is an established company in the lawn and garden products business. Its corporate citizenship is Ohio and it has been using the marks SCOTT'S and SCOTTS since 1907, its predecessor, O M Scott & Sons, having been founded in Marysville, Ohio in 1870, and having used the same marks. Plaintiff is the owner of a number of registrations of record in the United States Patent Office some of which employ the names SCOTT'S, SCOTT, and SCOTTS as well as brand names such as "Clout", "Bonus", "Turf Builder" and "Halts". The validity of the registrations is not here contested. Plaintiff sells its products, including grass seed, fertilizer, weed controls, pest controls, applicators and mowers, and rose bushes of all descriptions in various states through locally franchised dealers who are assigned territories exclusive to each dealer. Defendants are among 10 dealers who had an association known as Big Ten Garden Centers, Inc. The purpose of this association was cooperative buying and advertising of plaintiff's products sold by each franchised member of the association, the said products being available at the stores operated by the individually franchised dealers. In the early summer of 1960 at a meeting of the Big Ten (whose number had now diminished to 5, 4 of whom were franchised dealers) at which representatives of plaintiff were present, it was suggested by plaintiff's representatives that the name "Big Ten" be changed to a more appropriate name, one having more prestige, the name "Big Ten" having athletic rather than aesthetic connotation. The remaining dealers in the Big Ten then embarked upon the venture of selecting a new name. At about the same time there arose between plaintiff, on the one hand, and defendants, on the other, differences of opinion concerning the financing of certain advertising as well as certain aspects of the type of advertising. At the aforesaid meeting this phase of disagreement was discussed. Defendants, in carrying out the new name project, decided upon and adopted "Scot's Flower & Garden Centers" despite objection by certain members who subsequently withdrew from the association. Shortly after adoption of the new name by defendants plaintiff approached defendants and advised them that they should not and could not use the name of "Scot's" as plaintiff had a trademark on SCOTTS. Following this there appears to have developed hostility between plaintiff and defendants to the extent that plaintiff terminated the franchises with defendants and no longer supplied them with any of its products for sale by them to the public. Despite this apparent handicap, defendants obtained and have continued to obtain and sell plaintiff's products along with the products of other producers of lawn and garden products. Apparently plaintiff had to engage in de-

tailed investigation in order to ascertain the sources of defendants' supply of O M Scott products. There was testimony to the effect that defendants sell plaintiff's products at less than the prices its regularly franchised dealers must maintain. This is, of course, not pleasing to plaintiff, but it is apparently not the motivation behind this lawsuit, as this suit was commenced several months prior to the existence of any price-cutting by defendants. The nub of plaintiff's complaint is the use of the name of "Scot's" which it claims is reasonably calculated to deceive the public into believing that O M Scott & Sons Company has now entered the field of operating or sponsoring garden centers.

Defendants' answer to plaintiff's contention is that there can be no cause of action against them, as alleged, because

1) defendants are not "palming off" any products as that of any manufacturer or processor other than the true one;

2) the public gets exactly what it thinks it is buying;

3) there is no misrepresentation as to any item defendants sell;

4) any reasonably intelligent buyer will know that O M Scott is not operating garden centers which sell O M Scott products PLUS other competing brands;

5) plaintiff cannot have a trademark of a generic word or name which is in the public domain and which the public necessarily associates with the concept of thrift and fine character and identifies with Scotland.

In addition to this, defendants' position is that their adoption of the name "Scot's" was not in any way influenced by the prestige of The O M Scott & Sons Company name in the lawn and garden products field . . . that they hit upon the name as the one which would best convey to the public the idea of thrift and quality.

■ The law of trademark infringement and unfair competition has ex-perienced a broadening during recent years. The literal fine-tooth-comb approach is not now generally used by the courts and unfair competition has been held to embrace situations where there is in fact no actual competition. This is, of course, contrary to the "old" view. Trademark infringement is now broadly held to embrace even situations where only a property right in a trade name has been invaded. See 52 Am.Jur. Trademarks, Tradenames and Trade Practices § 83 et seq. and annotation in 148 A.L.R. 12.

■ The present case does not require legalistic gymnastics to arrive at a proper solution. Assuming that each and every defense urged by defendants is factually true, there emerges one clear and distinct overriding truth . . . and we conclude as a matter of law that . . . the use of the name "Scot's" in the flower and garden centers title is an appropriation of plaintiff's name SCOTTS to the extent that some of the good will and prestige and identity of SCOTTS is being diluted without the consent of its owner. [Lyon v. Quality Courts United, 249 F.2d 790 (6 Cir. 1957); Abramson v. Coro, Inc., 240 F.2d 854 (5 Cir. 1957)]. Secondly, we conclude as a matter of law that the public is necessarily led to believe that the plaintiff company has some interest in, affiliation with, or sponsorship of Scot's Flower & Garden Centers. Thirdly, we conclude that defendants have infringed upon plaintiff's trade name and have been thereby guilty of unfair competition. An appropriate injunction may therefore be presented.

Insofar as findings of fact and conclusions of law are necessary for compliance with Rule 52, they are deemed to be contained in the foregoing. Leave is granted to plaintiff to submit to the Court such proposed supplemental findings of fact and conclusions of law as plaintiff deems to be appropriate.

As to the issue of damages, the trial of which was ordered to be conducted separately, the Court will hold a pretrial conference upon proper notice.