**WALKER MANUFACTURING, INC., Plaintiff,**

v.

**HOFFMANN, INC., an Iowa Corporation, Larry Emmert, Marty Sixt, and J.R. Sales and Machinery Service, Inc., Defendants.**

No. C00–103–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Sept. 13, 2002.

Mark L. Zaiger, Kevin J. Caster, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Plaintiff.

Michael L. Noyes, Lane & Waterman, Davenport, IA, Michael McDonough, Moyer & Bergman, PLC, Gregory M. Lederer, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for Defendants.

Marty Sixt, Iowa City, IA, Pro se.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT HOFFMANN, INC.'s MOTION FOR PARTIAL SUMMARY JUDGMENT**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1026
   A. Reliance Upon Prior Factual Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . 1026
   B. Real Party in Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1027
      1. Introductory facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1027
      2. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1029
         a. Timeliness of Hoffmann's objection . . . . . . . . . . . . . . . . . . . . . 1029

      b.   *Requirements for real party in interest* ........................ 1030
   3.  *Conclusion* .............................................. 1033

II.  *FACTUAL BACKGROUND* ........................................... 1033

III.  *DISCUSSION* ...................................................... 1035
   A.  *Standards for Summary Judgment* ................................. 1035
     1.  *Requirements of Rule 56* ....................................... 1035
     2.  *The parties' burdens* .......................................... 1036
   B.  *Lanham Act Claim (Count II) and Unfair Competition Claim (Count V)* .................................................................. 1036
   C.  *Copyright Infringement Claim (Count III)* ........................... 1038
   D.  *Breach of Fiduciary Duty Claim (Count VIII)* ........................ 1041

IV.  *CONCLUSION* ..................................................... 1041

This matter is before the court on a motion for partial summary judgment (Doc. No. 101) filed February 21, 2002, by the defendant Hoffmann, Inc. ("Hoffmann")[1]. Hoffmann supports its motion with a brief, a statement of facts, and an appendix filed under seal (Doc. Nos. 102, 103 & 105, respectively). After receiving an extension of time from the court, the plaintiff Walker Manufacturing, Inc. ("Walker") filed, on May 22, 2002, a brief in resistance to Hoffmann's motion, a statement of disputed facts, and an appendix filed under seal (Doc. Nos. 111, 112 & 113, respectively), followed on May 24, 2002, by an "Affidavit of Richard Rank Ratifying Right to Sue" (Doc. No. 114). Hoffmann filed a reply brief and a response to Walker's statement of additional facts on June 5, 2002, together with a Second Supplemental Appendix filed under seal (Doc. Nos. 118, 119 and 123, respectively).

Hoffmann is represented on its motion by Michael L. Noyes and Nathan Clark of Lane & Waterman, Davenport, Iowa. Walker is represented by Mark L. Zaiger and Kevin J. Caster of Shuttleworth & Ingersoll, Cedar Rapids, Iowa.

## I. INTRODUCTION

Before turning to the merits of Hoffmann's motion, the court will address two preliminary issues raised by Hoffmann, one relating to Walker's statement of facts and the other relating to Walker's viability as a plaintiff in this case.

### A. Reliance Upon Prior Factual Findings

Hoffmann contends Walker has impermissibly relied upon the facts found by the court in its supplemental order on Walker's motion for preliminary injunction (*i.e.,* Order entered August 28, 2000, Doc. No. 33, supplementing Order of August 11, 2000, Doc. No. 30, granting Walker's motion for preliminary injunction). Hoffmann argues "the findings entered by this Court at the preliminary injunction stage have no effect on the trial stage, including

---

1. Although Hoffmann's motion is not designated as such, it is actually a motion for partial summary judgment, rather than for judgment on the entirety of Walker's claims. Hoffmann only addresses, on substantive grounds, Counts II (Lanham Act), III (copyright infringement), V (unfair competition), and VIII (breach of fiduciary duty), of Walker's complaint. In addition, Hoffmann seeks dismissal of Counts VI (breach of contract) and VII (fraudulent nondisclosure), as well as Counts II, V, and VIII, on procedural grounds. Thus, even if Hoffmann's motion were granted in full, Counts IV (misappropriation of trade secrets), IX (interference with prospective business advantage), and X (violation of agreement not to compete) would still remain for adjudication in this case. (As discussed further below, Count I, the RICO count, was dismissed by the court previously.)

on the instant motion for summary judgment." Doc. No. 119, p. 1 (citing *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 354 F.2d 459, 463 (2d Cir. 1965)). Hoffmann therefore argues Walker's factual contentions should be ignored to the extent those contentions rely on "findings made by this Court in a proceeding that has no effect on this stage of the litigation." Doc. No. 119, p. 1.

█ It is a "general rule that 'the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.'" *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir.1995) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981)). *Accord Irish Lesbian, Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998); *Six Clinics Holding Corp., II v. Cafcomp Sys. Inc.*, 119 F.3d 393, 400 (6th Cir.1997); *TEC Eng. Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir.1996); *Clark v. K–Mart Corp.*, 979 F.2d 965, 969 (3d Cir.1992); *Mylett v. Jeane*, 910 F.2d 296, 299 (5th Cir.1990); *United States v. Jefferson County*, 720 F.2d 1511, 1519 n. 21 (11th Cir.1983). Thus, the substantive issues discussed in the court's Order granting the preliminary injunction are not foreclosed from being relitigated at trial. *See Henderson, supra.*

However, this does not mean that where the court's factual findings at the preliminary injunction stage are supported by the record, those findings have "no effect on this stage of the litigation." While it is true the parties have not benefitted from a full opportunity to present their case, the court nevertheless may rely, to the extent appropriate, upon sworn testimony and affidavits offered in the injunction proceedings. *Cf. Hamilton Watch Co. v. Benrus*

Watch Co., 206 F.2d 738, 740 (2d Cir.1953) (although findings derived from evidence presented at preliminary hearing are "necessarily tentative," where they are supported by the oral testimony, the court "cannot possibly declare them 'clearly erroneous.'"). Furthermore, in a summary judgment posture, Hoffmann's argument is to some extent moot because the court views all the facts in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir.1996). The court will consider the prior factual findings to the extent they are supported by the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R.Civ.P. 56(c).

### B. Real Party in Interest

#### 1. Introductory facts

Preliminarily, Hoffmann argues several of Walker's claims should be dismissed on procedural grounds because Walker is not a real party in interest. The following facts are relevant to this issue.

Walker is the successor corporation to R.J. Manufacturing, Inc. ("RJM"). RJM manufactured and sold self-propelled crop sprayers [2] from at least 1995 until May 2000, when Walker purchased most of RJM's assets. RJM marketed its crop sprayers under trademarked names including "Walker," "Walker 44," and "Walker Ultra" (the "Walker trademarks"). As part of the asset purchase agreement between Walker and RJM, Walker became owner of the Walker trademarks, as well

---

**2.** "The sprayers are equipped with a self-propelled frame, cab for the operator, and long boom arms used for the spraying of crops.

The units sell for between $150,000 and $175,000." Doc. No. 33, p. 4.

as certain other tangible and intangible property of RJM.

Hoffmann's primary business is manufacturing and selling silos and smokestacks. Hoffmann owns and operates a fabrication shop which fabricates parts and supplies for its silos and smokestacks, and Hoffmann also does custom fabrication for other businesses. In January 1998, Martin Sixt, who was head engineer and chief of design services at RJM, negotiated a contract with Hoffmann to have Hoffmann fabricate parts to be used in RJM's crop sprayers. As part of that contract, RJM supplied Hoffmann with certain design drawings and specifications in both paper and electronic formats. As will be discussed in more detail later in this opinion, this lawsuit centers around Walker's claim that Hoffmann misappropriated the RJM design drawings and specifications and used them to design Hoffmann's own crop sprayer.

Hoffmann argues the terms of the asset purchase agreement between RJM and Walker did not convey to Walker the right to sue Hoffmann for claims arising from the RJM–Hoffmann contract. The agreement contains a list of "omitted assets" which includes, among other things, the following:

> All claims, demands or other causes of action that may be asserted by Seller, now or in the future, against any person or entity, specifically including but not limited to the claim that may be asserted against Poclain Hydraulics, Inc.

Doc. No. 105 (sealed), p. 109, ¶ 2(d) [3]. Hoffmann also claims RJM assigned to Walker only those certain contracts listed in the agreement, and the RJM–Hoffmann contract is not so listed.[4] Further, Hoffmann argues the asset purchase agreement contains only a general assignment of intellectual property from RJM to Walker, and without a specific assignment of RJM's pre-transfer claims against Hoffmann, Walker is precluded from raising any claims that existed prior to the transfer. Hoffmann concludes RJM retained any claims it had against Hoffmann and did not convey those claims to Walker, with the result that "Walker does not possess many of the rights it seeks to enforce." Doc. No. 102, p. 6. Therefore, Hoffmann claims Walker is not the real party in interest and Hoffmann is entitled to dismissal of certain of Walker's claims, specifically Count II (Lanham Act), Count V (unfair competition), Count VI (breach of contract), Count VII (fraudulent nondisclosure), and Count VIII (breach of fiduciary duty).

Hoffmann further argues that the court "should neither permit Walker the opportunity to ratify the action nor honor any subsequent assignment from [RJM]," because Hoffmann "has been greatly prejudiced by defending against claims Walker has no right to assert." Doc. No. 102, p. 8.

Hoffmann claims its argument that Walker is not the real party in interest has been properly and timely raised, asserting:

> While Federal Rule of Civil Procedure 17(a) does not contain a specific procedure for raising such an objection, legal authority supports the claim that the objection may properly be raised in a pre-trial motion such as a motion for summary judgment. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary

---

**3.** Documents previously sealed in this case, including the parties' appendices with respect to the present motion, are deemed unsealed only to the limited extent the court quotes from or specifically refers to portions of the sealed documents.

**4.** Schedule 6g, Assigned Contracts, includes two premises leases, insurance contracts, and certain "Existing Orders." Doc. No. 105 (sealed), p. 132.

Kay Kane, *Federal Practice and Procedure* § 1554, at 406 ("It also seems logical to allow the objection to be raised by a preliminary motion when it may result in a dismissal of an action if the real party in interest cannot be joined or substituted.") (citing *Mitsui & Co. v. P.R. Water Resources Auth.*, 528 F.Supp. 768, 773 n. 6 (D.P.R.1981) (permitting an objection raised in a motion for summary judgment)).

Doc. No. 102, pp. 7–8.

Walker asserts three defenses to Hoffmann's arguments. First, Walker argues Hoffmann has waived the right to object on real party in interest grounds because Hoffmann failed to raise the objection in a timely manner. Hoffmann waited some eighteen months after the filing of the lawsuit to assert the objection, and also allowed a full hearing to proceed on Walker's motion for preliminary injunction without raising the real party in interest objection. Second, Walker argues it is, in fact, the real party in interest. Third, Walker states that even if it is not the real party in interest, its filing of the present lawsuit has been ratified by RJM. Walker points out that Rule 17(a), Federal Rules of Civil Procedure, requires a real party in interest objection to be made timely to allow the plaintiff a reasonable time to obtain ratification by the real party in interest, and argues Hoffmann cannot have its cake and eat it too, by delaying some eighteen months to raise the objection and then profiting from the delay by claiming prejudice. *See* Doc. No. 111.

## 2. Discussion

### a. Timeliness of Hoffmann's objection

■ Although the court agrees the objection should have been raised sooner[5], the court finds Hoffmann's real party in interest objection has been raised well before trial and, in that respect, the objection is timely. *See, e.g., United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir.1996) (real party in interest objection should be raised in a timely fashion, with "reasonable promptness"; objection waived when not raised until pretrial conference, one week before trial); *Sun Refining & Mktg. Co. v. Goldstein Oil Co.*, 801 F.2d 343, 344–45 (8th Cir.1986) (real party in interest objection waived when not raised until after trial) (citing *Chicago & Northwestern Transp. Co. v. Negus–Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir.1977) (when real party in interest objection is "not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived"); *Hefley v. Jones*, 687 F.2d 1383, 1387–88 (10th Cir. 1982) and *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1373–74 (10th Cir.1982) (real party in interest defense waived when not asserted until very shortly before trial)); *Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 (5th Cir.1989) (real party in interest defense raised for first time on motion for directed verdict) (citations omitted). *See also* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. &*

---

5. At one point, the Eighth Circuit even suggested that a challenge to the proper party plaintiff should be raised in the Answer by affirmatively pleading lack of capacity pursuant to Fed.R.Civ.P. 9(a), as a means of raising the issue of real party in interest under Fed. R.Civ.P. 17. *See Blackmar v. Lichtenstein*, 578 F.2d 1273, 1275 n. 2 (8th Cir.1978). *But see Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 n. 3 (5th Cir.1989)

(defense of real party in interest is distinct from lack of capacity, which must be raised by specific negative averment pursuant to Fed.R.Civ.P. 9(a) to avoid waiver) *and* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.2d* § 1559 (capacity "should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest").

*Proc. Civ.2d* § 1554, suggesting "it probably is appropriate to include the objection in the answer to the complaint, thereby treating it as something in the nature of an affirmative defense under Rule 8(c). It also seems logical to allow the objection to be raised by a preliminary motion when it may result in a dismissal of the action if the real party in interest cannot be joined or substituted." Wright and Miller also note that "courts should be given the flexibility to treat the waiver question as one addressed to their discretion so that the issue can be determined in terms of what seems appropriate in a particular case." *Id.*

Hoffmann has raised its objection early enough to allow resolution of the issue well before trial, and the court finds the objection was not waived by Hoffmann's failure to raise it until this point in the litigation.

### b. Requirements for real party in interest

Rule 10, Federal Rules of Civil Procedure, requires the title of an action to "include the names of all the parties." Rule 17(a), Federal Rules of Civil Procedure, provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest. . . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed

after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

"This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp., supra,* 88 F.3d at 569 (citing *Iowa Public Service Co. v. Medicine Bow Coal Co.,* 556 F.2d 400, 404 (8th Cir.1977)). *See Farrell Constr. Co. v. Jefferson Parish, La.,* 896 F.2d 136, 140 (5th Cir.1990) ("[A] party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it.").[6]

The real party in interest requirement "is in place 'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" *United HealthCare,* 88 F.3d at 569 (quoting Fed. R.Civ.P. 17(a), Advisory Committee Note). As this court has explained previously, "These requirements are not a matter of mere administrative convenience for court staff and counsel. They also protect the public's legitimate interest in knowing which disputes involving which parties are before the federal courts that are sup-

---

**6.** *See also Mitchell Food Products, Inc. v. United States,* 2002 WL 1760859, 43 Fed. Appx. 369 (Fed.Cir.2002) (unpublished disposition), where the court distinguished between the concepts of "standing" and "real party in interest":

> Standing and real party in interest are two distinct concepts, but both are necessary to prevail. *See* Wright & Miller, Federal Practice & Procedure, Vol. 6 § 1543 (1990). Standing requires that there be an injury-in-fact fairly traceable to the actions of the defendant that is redressable by the court, and these elements are "an indispensable

part of the plaintiff's case." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The real party in interest requirement, on the other hand, focuses on ensuring that the proper plaintiff is prosecuting the claim, *i.e.,* that the plaintiff is the person who possesses the right to be enforced. Fed. R.Civ.P. 17; Wright & Miller, § 1543. Real party in interest, unlike standing, is not jurisdictional. And real party in interest, we note, can be cured under Federal Rule of Civil Procedure 17(a).

ported with tax payments and that exist ultimately to serve the American public." *Doe v. Hartz,* 52 F Supp.2d 1027, 1045 (N.D.Iowa 1999) (citations omitted).

■ To resolve the issue of whether Walker is the real party in interest for purposes of its claims in this action, the court must determine whether Walker possesses the rights it seeks to enforce. Walker asserts claims under the following theories of recovery: Count I (originally brought against all four defendants, but now dismissed [7]), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* specifically 18 U.S.C. § 1962(c), and the Iowa Ongoing Criminal Conduct Code of 1997 ("IOCCC"), Iowa Code § 706A.1 *et seq.,* specifically Iowa Code § 706A.2(1)(c); Count II (brought against Hoffmann), under section 43(a) of the Lanham Trade–Mark Act of 1946 ("Lanham Act"), codified at 15 U.S.C. § 1125(a); Count III (brought against Hoffmann), copyright infringement under 17 U.S.C. § 106; Count IV (brought against Hoffmann and Sixt), misappropriation of trade secrets under Iowa Code § 550; Count V (brought against Hoffmann and J.R. Sales), unfair competition under Iowa common law; Count VI (brought against Hoffmann), breach of contract under Iowa common law; Count VII (brought against Hoffmann), fraudulent non-disclosure under Iowa common law; Count VIII (brought against Hoffmann), breach of fiduciary duty under Iowa common law; Count IX (brought against Hoffmann and J.R. Sales), interference with prospective business advantage

under Iowa common law; and Count X (brought against Sixt), violation of noncompete agreement under Iowa common law. *See* Second Amended Complaint, Doc. No. 88.

Inherent in the determination of whether Walker possesses the rights it seeks to enforce in these causes of action is an examination of the asset purchase agreement for purposes of discovering exactly what rights were transferred to Walker, or would accrue to Walker, by virtue of that agreement. The asset purchase agreement itself is governed by Iowa law. *See* Doc. No. 105 (sealed), p. 117, ¶ 16. Iowa law provides that when a party makes a full and complete assignment of rights under a contract, the assignee, rather than the assignor, is the proper party to maintain the cause of action. *See Estate of Dyer v. Krug,* 533 N.W.2d 221, 224 (Iowa 1995) (citing *Archibald v. Midwest Paper Stock Co.,* 158 N.W.2d 739, 742 (Iowa 1968)). The question then is whether RJM made a "complete assignment of rights" to Walker for purposes of enforcing the rights sought to be enforced in this action.

"Schedule I: Purchased Assets" attached to the asset purchase agreement specifies that the following assets were sold by RJM to Walker pursuant to the agreement: (1) all of RJM's inventory, wherever located; (2) all of RJM's equipment and fixtures, wherever located; (3) "All intellectual property of [RJM], including but not limited to all trademarks (including but not limited to "Walker Spray-

---

**7.** The court granted Hoffmann's and Emmert's motion to dismiss Count I of the Amended Complaint on April 25, 2001 (Doc. No. 73). The court granted partial summary judgment in favor of J.R. Sales on Count I of the Second Amended Complaint on September 24, 2001 (Doc. No. 96). The Second Amended Complaint contained no substantive changes relevant to the court's resolution of

Count I (*see* Doc. No. 96, n. 2). Although Sixt has not filed a separate motion to dismiss or for summary judgment as to Count I, the court, taking up the matter *sua sponte,* finds the analysis with respect to Sixt is identical to that contained in the prior orders. The court therefore **dismisses Count I as to Sixt,** with the result that Count I is dismissed fully from this action.

er", "Walker Ultra" and "Walker 44"), patents, engineering drawings, and product designs"; (4) all of RJM's receivables, including but not limited to accounts receivable; (5) all of RJM's prepaid expenses; (6) all Assigned Contracts; (7) all prepaid orders; (8) all of RJM's business records, "including but not limited to distributor agreements, purchase orders, vendor and supplier records, customer lists, warranty information and claims"; and (9) all of RJM's cash, deposits and notes receivable. Doc. No. 105 (sealed), p. 127. As noted previously, the schedule of omitted assets lists, "All claims, demands or other causes of action that may be asserted by [RJM], now or in the future, against any person or entity, specifically including but not limited to the claim that may be asserted against Poclain Hydraulics, Inc." Doc. No. 105 (sealed), p. 109, ¶ 2(d).

The court finds the schedule of transferred assets and the schedule of omitted assets are in conflict to the extent the asset purchase agreement purports to transfer the "Walker trademarks" to Walker, but then appears to withhold the ability to enforce rights related to those trademarks. Under Iowa law, the "ambiguity *vel non* of contractual language must be determined by looking at the contract as a whole." *Cooper Distributing Co. v. Amana Refrig., Inc.*, 63 F.3d 262, 286 (3d Cir.1995) (citing *Freese v. Town of Alburnett*, 255 Iowa 1264, 1267, 125 N.W.2d 790, 792 (1964) ("[A]mbiguity appears when a genuine doubt appears as to the meaning of a contract, and the instrument must be construed as an entirety.")). In interpreting an ambiguity, courts look to "the intent of the contracting parties at the time the contract was made." *Home Fed. Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984) (citing *Freese v. Town of Alburnett*, 255 Iowa 1264, 1267, 125 N.W.2d 790, 792 (1964) (court looks to "the situation of the parties, the objects they were trying to accomplish, and any other facts in evidence" to determine their intent)). Further, "the practical construction given the ambiguous terms of an agreement will usually be adopted by the courts." *Webb v. Lake Mills Comm. School Dist.*, 344 F.Supp. 791, 801 (N.D.Iowa 1972) (citations omitted).

In the present case, it is clear the parties' intent at the time they entered into the asset purchase agreement was for RJM to transfer to Walker not only "the R.J. Manufacturing intellectual property, trade secrets, diagrams, drawings, engineering materials, [and] the trademarks 'Walker' and 'Walker 44,' " but also *"the authority to protect those rights."* Doc. No. 114, Aff. of Richard Rank, ¶ 3 (emphasis added); Doc. No. 113 (sealed), p. 152 (Joe Spreitzer, President of Walker, testifying it was his understanding the asset purchase agreement transferred to Walker "every right that [RJM] had as to the design of the Walker equipment"). Thus, the court finds Walker is the real party in interest for purposes of Counts I through V, and VII through X.

The analysis differs somewhat with respect to Count VI, which alleges Hoffmann breached the terms and conditions of its contract with RJM. As Hoffmann points out, the asset purchase agreement lists specific contracts that were transferred to Walker under the agreement. The RJM–Hoffmann contract is not among them. Without an assignment of that contract, RJM remains the real party in interest with respect to claims for breach of the contract. The court finds, however, that by virtue of Richard Rank's "Affidavit Ratifying Right to Sue," Doc. No. 114, RJM has ratified Walker's authority to bring this action in all respects, including the breach of contract claim. The court overrules Hoffmann's argument that Walker should not, at this point, be able to obtain

RJM's ratification of this action or assignment of the RJM–Hoffmann contract. It is clear that RJM intended to convey to Walker not only its trademarks and most of its assets, but also the right to enforce both the trademarks and all the rights logically related to ownership of the trademarks. RJM has indicated it "does not in any manner object to Walker Manufacturing's suit against Hoffmann, Inc." on any basis, including the breach of contract claim, and RJM expressly ratifies Walker's right to sue Hoffmann. Doc. No. 114, ¶ 7. Furthermore, the court rejects Hoffmann's claim that is has been prejudiced by defending this action against Walker, as plaintiff. None of the rights Walker is seeking to enforce were obscured or made more difficult to apprehend by virtue of their being asserted by Walker as opposed to RJM.

### 3. Conclusion

For the reasons discussed above, the court finds Walker to be the real party in interest for purposes of this action, both by operation of the asset purchase agreement and by RJM's ratification of this lawsuit. Having so found, **the court denies Hoffmann's motion to the extent it seeks dismissal of Counts II, V, VI, VII and VIII, solely on the basis that Walker is not the real party in interest.** The court now will turn to consideration of Hoffmann's motion for summary judgment on the merits.

## II. FACTUAL BACKGROUND

As noted previously, RJM contracted with Hoffmann in January 1998, to have Hoffmann fabricate parts to be used in RJM's crop sprayers. As part of that contract, RJM supplied Hoffmann with certain design drawings and specifications in both paper and electronic formats. Each of the paper design drawings contained the following reservation of rights typed conspicuously on the face of the drawing, sometimes in multiple locations:

RJ MANUFACTURING, INC. RESERVES PROPRIETARY RIGHTS TO THIS DRAWING AND THE DATA SHOWN THEREON; SAID DRAWING AND/OR DATA ARE CONFIDENTIAL AND ARE NOT TO BE USED OR REPRODUCED FOR ANY PURPOSE WITHOUT OUR PERMISSION.

Walker has not registered a copyright in the drawings or other design materials that are the subject of this lawsuit.

Pursuant to their contract, Hoffmann fabricated parts for RJM during 1998 and 1999. In 1999, RJM ran into financial difficulties and became delinquent in paying Hoffmann under the contract. In partial payment of its indebtedness, RJM transferred ownership to Hoffmann of two used RJM crop sprayers. RJM's financial woes continued, and at some point in 2000 (the exact timing of which is disputed by the parties), the fabrication contract was terminated.

In late 1999, Hoffmann's President, Larry Emmert, decided Hoffmann would manufacture and sell its own crop sprayer, to be dubbed the "Silver Hawk." In early 2000, Hoffmann contracted with Marvin Sixt, a former design engineer at Walker and RJM, to assist Hoffmann in designing its sprayer. Design work began in January 2000, with Hoffmann hoping the sprayer would be ready to unveil at a trade show in August 2000. Hoffmann attempted to keep its design project confidential, and some Hoffmann employees referred to the project as "Area 51." The parties dispute the extent to which Hoffmann's design and production of the Silver Hawk had progressed by August 2000, with Walker claiming Hoffmann "produced a prototype sprayer that could have been sold," and Hoffmann claiming it "has not produced a sprayer ready for marketing or

sale" and "has never sold a crop sprayer." Doc. No. 112, ¶ 12; Doc. No. 103, ¶ 12. However, it is undisputed that Hoffmann used RJM's designs and specifications, at least to some degree, in the design of the Hoffmann sprayer. *See* Doc. No. 112, ¶ 20; Doc. No. 119, ¶ 20.

The extent to which Hoffmann used RJM's drawings and specifications in designing the Silver Hawk is hotly disputed between the parties. In particular, Walker claims Hoffmann used two proprietary RJM components in its sprayer design: the "L & S leg [8]" and an Air Bag Suspension System. It is undisputed that during the design process, Hoffmann had in its possession the two crop sprayers it had obtained from RJM in partial payment of RJM's indebtedness. However, neither of the two used sprayers contained either the L & S leg assembly or the Air Bag Suspension System.

Walker claims Hoffmann used the RJM drawings and specifications for the L & S leg. Walker further claims the L & S leg had not previously been made public, and had only been installed on one machine for research and development purposes. Hoffmann counters that its leg assembly design differs from the RJM design, and Hoffmann denies Walker's claim that the L & S leg assembly had not been made public because the assembly was "open to inspection at Century Manufacturing," a company that painted the assembly.

With regard to the Air Bag Suspension System ("ABSS"), Sixt had designed the ABSS while he was employed at Walker. Hoffmann's president, Emmert, knew of this fact, and both Emmert and Sixt knew the ABSS design belonged to Walker. RJM did not obtain a patent on the ABSS. Hoffmann incorporated an air bar suspension system into its new sprayer. The parties dispute the extent to which the Hoffmann air bag suspension system is similar to the ABSS which Sixt designed while he was employed by RJM/Walker, with Walker claiming "Hoffmann incorporated a virtually identical design into its sprayer," and Hoffmann claiming its design "was only conceptually similar" to the RJM design. Doc. No. 112, ¶ 23; Doc. No. 119, ¶ 23. It is undisputed that in early April 2000, Sixt filed a Declaration of Patent Application on which he claimed to be the "original, first and sole inventor" of "an improved vehicle suspension system." Concurrently, Sixt and Emmert executed an assignment of all rights in this invention to Hoffmann, and they mailed the assignment of rights to the Commissioner of Patents and Trademarks for recording.

In February 2000, Emmert met with Jan Rule ("Rule"), principal of J.R. Sales and Machinery Service, Inc.[9] ("J.R.Sales"),

---

8. At the preliminary injunction hearing on August 4, 2000, Mark Brower, a design engineer at Walker and previously at RJM, explained that "L & S refers to the manufacturer of the motor drive and the L & S leg is a leg weldment that has been modified to accept that type of gear motor." (Tr. at 24) The L & S leg is a component that was fabricated by Hoffmann for RJM.

9. There appears to be some confusion as to the proper designation of the J.R. Sales defendant. At the time this case was filed, the defendant was designated as "Jan Rule *dba* J.R. Sales and Advantage Sprayers." On May 16, 2001, the plaintiff moved to amend its complaint to identify the defendant as "J.R. Sales and Machinery Service, Inc." (Doc. No. 81) The motion was granted (Doc. No. 87), and a Second Amended Complaint was filed naming the corporate defendant. (Doc. No. 88) Nevertheless, numerous subsequent filings, including Hoffmann's summary judgment papers, have continued to identify the defendant as "Jan Rule *dba* J.R. Sales and Advantage Sprayers." The court finds that since June 27, 2001, when the court granted the plaintiff's motion to amend the complaint to correct the defendant's name, the proper designation for this defendant is "J.R. Sales and Machinery Service, Inc."

to discuss possible distribution of the Hoffmann sprayer. Until May 2000, J.R. Sales was a distributor of Walker sprayers. Emmert gave Rule two artist's drawings of the Silver Hawk sprayer. In addition, Rule had obtained some photographs of the Silver Hawk sprayer from a third party. Rule discussed the Silver Hawk sprayer with potential customers at trade shows between March 2000 and August 2000, and Rule made a presentation to a customer in Minneapolis regarding the Silver Hawk sprayer in July 2000.

On June 27, 2000, Hoffmann offered an initial draft of a distribution contract to Rule. On the same day, Rule sent a letter to Walker customers on J.R. Sales letterhead, stating as follows:

Dear Valued Walker Customer:

The last few months have brought a lot of changes to JR Sales. Thomas Paine said it best: "These are the times that try a man's soul!" R.J. Mfg. has brought the servicing and selling of the Walker 44 to a complete and undeniable stop.

Fortunately, we have sourced nearly 100% of the replacement parts needed to service your Walker 44. This has proven to be a benefit for our business and yours because we are buying, for the most part, at better prices and are eager to pass this savings on to the end user.

JR Sales is delighted to announce the partnering with Hoffmann, Inc. Hoffmann, Inc. has been involved in supplying components for another sprayer manufacturer. They have decided to build and market their own concepts. This new machine offers the features that other manufacturers have only talked about. 30–mph., road speed and an air suspension are only a few of the new features of this new high clearance sprayer. Dedicated engines from Caterpillar, 3116 or the 3125, gives us total support from Caterpillar. There are

many more features and benefits on the new and exciting machine that you will want to see.

We have valued your business in the past and hope to continue this relationship. Whether it is a *New Silver Hawk* or existing Walkers, Hagies, Wilmars or Rogators, etc., please give us a call[.]

Sincerely, JR SALES, Jan T. Rule

Doc. No. 105 (sealed), p. 79. In a postscript to the letter, Rule listed six "bullet" points under the heading "Industry News." One of the bullet points was listed as "Walker Scam!" *Id.*, p. 80.

In the fall of 2000, Rule sold, on Hoffmann's behalf, the two used Walker 44 sprayers that RJM had transferred to Hoffmann in partial payment of RJM's indebtedness to Hoffmann.

Each of the parties has set forth additional facts which they contend are in dispute, but the court finds the facts set forth herein are sufficient to resolve Hoffmann's motion for partial summary judgment.

### III. DISCUSSION

#### A. Standards for Summary Judgment

On several prior occasions, this court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

#### 1. Requirements of Rule 56

Rule 56 provides, in pertinent part, that "[a] party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as

to all or any part thereof." Fed.R.Civ.P. 56(b). Further,

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)); *accord Lockhart v. Cedar Rapids Comm. Sch. Dist.,* 963 F.Supp. 805, 814 n. 3 (N.D.Iowa 1997) (citing *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999).

### 2. The parties' burdens

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the record showing a "lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998). When this burden is met, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Instead, the opposing party is required to go beyond the pleadings, and by either affidavits or the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997). If the opposing party fails to make a sufficient showing of an essential element of a claim for which that party has the burden of proof, then the movant is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In considering a motion for summary judgment, the court must viewing all the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Quick,* 90 F.3d at 1377.

Applying these principles, the court turns to consideration of Hoffmann's motion for summary judgment.

### B. Lanham Act Claim (Count II) and Unfair Competition Claim (Count V)

■ In Count II of its complaint, Walker claims Hoffmann violated the Lanham Act by falsely designating the origin of parts utilized in Hoffmann's crop sprayers. Walker contends Hoffmann, acting in con-

cert with others, used proprietary RJM designs and specifications to produce parts for the manufacture of Hoffmann's own crop sprayers, while representing that the design was Hoffmann's own, thereby engaging in a practice known as "reverse passing off" or "reverse palming off" under the Lanham Act.[10] Hoffmann denies it engaged in reverse passing off, and in particular denies it ever committed the alleged activities "in commerce."

The applicable portion of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, *or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—*
>
> > (A) *is likely to cause confusion, or to cause mistake, or to deceive* as to the affiliation, connection, or association of such person with another person, or *as to the origin*, sponsorship, or approval *of his or her goods*, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added).

False designation of origin falls within the practice known as "reverse passing off" or "reverse palming off," described by the Eighth Circuit Court of Appeals in *Pioneer Hi–Bred International v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226 (8th Cir.1994), as follows:

> The typical Lanham Act claim involves one of two factual patterns: (1) a defendant's false advertising of its goods or services; or (2) the selling or "palming off" by a defendant of its goods by use of a competitor's name. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir.1988). The statute, however, extends beyond these isolated patterns, reaching those situations which are "economically equivalent to palming off." *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981) (internal quotation omitted). . . .
>
> Reverse palming off is essentially the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods. [Footnote omitted.] *Montoro*, 648 F.2d at 605; *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1203 n. 1 (7th Cir.1990). The doctrine includes situations in which a defendant markets another's product that has been only slightly modified and then relabeled. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir.1990); *Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 412, 415 (2d Cir.1982).

*Pioneer Hi–Bred*, 35 F.3d at 1241.

Hoffmann denies it used RJM's designs and specifications to an extent that would constitute reverse passing off, and in particular, Hoffmann claims it did not violate the "uses in commerce" requirement. Hoffmann claims it is undisputed that it

---

**10.** The court in *Pioneer Hi–Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226 n. 45 (8th Cir.1994) noted:

> Courts have used the terms "reverse palming off" and "reverse passing off" interchangeably. *Compare Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981), *with Williams v. Curtiss–Wright Corp.*, 691 F.2d 168, 172 (3d Cir.1982).

"did not advertise or sell any sprayer," either before or after the preliminary injunction was entered in this case. Hoffmann claims Rule's letter to Hoffmann customers discussing the Silver Hawk was "unauthorized" and did not contain information sufficient to allow a comparison between Hoffmann's sprayer and Walker's sprayer.

Walker, on the other hand, argues Rule's letter was not unauthorized, but rather was in accordance with the distribution agreement between Rule and Hoffmann. Walker claims Hoffmann's and Rule's actions resulted in a negative impact on the goodwill of the Walker name which is sufficient to afford Lanham Act protection, even if the defendants' actions took place only in intrastate commerce. Doc. No. 111 (citing *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 669 (2d Cir.1968)).

In *Franchised Stores of New York, Inc. v. Winter* ("*Winter*"), the Second Circuit Court of Appeals explained:

It has long since been established that the Congress by virtue of its power to 'regulate Commerce * * * among the several States' may regulate purely intrastate commerce which exerts a substantial effect on interstate commerce. *See, e.g., Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). This interpretation has been widely followed in cases under the Lanham Act and federal subject matter jurisdiction has been upheld where an act of infringement though occurring in intrastate commerce has a substantial effect on interstate commerce. *See Pure Foods, Inc. v. Minute Maid Corp.*, 214 F.2d 792 (5th Cir.), *cert. denied* [,] 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697 (1954); *Iowa Farmers Union v. Farmers' Educational and Co-op Union*, 247 F.2d 809 (8th Cir.1957); *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790 (6th

Cir.1957); *Drop Dead Co. v. S.C. Johnson & Son, Inc.*, 326 F.2d 87 (9th Cir. 1963), *cert. denied* [,] 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964). A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement. (Citations omitted.)

*Winter*, 394 F.2d at 669.

It is readily apparent from the parties' summary judgment papers that the extent to which Hoffmann used the RJM/Walker designs and specifications in the Hoffmann sprayer is hotly contested. The same is true as to the extent to which Hoffmann marketed the sprayer, whether in intrastate or interstate commerce. Another relevant question in resolving Walker's Lanham Act claim may be whether actual confusion resulted in the marketplace as a result of Hoffmann's/Rule's actions. *See Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1215 (8th Cir.1986) (discussing extent to which proof of "actual confusion," or lack of such proof, may be indicative of whether "palming off" exists).

Similar factual issues exist as to Walker's unfair competition claim (Count V), which also hinges on whether Hoffmann and Rule misrepresented the source of the Hoffmann sprayers or their component parts. Taking the facts in the light most favorable to Walker, as the nonmoving party, the court finds genuine issues of material fact exist that preclude summary judgment on Walker's Lanham Act claim (Count II) and unfair competition claim (Count V).

### C. Copyright Infringement Claim (Count III)

Hoffmann argues that because Walker has never registered the copyright for which it seeks protection in this action, this

court lacks jurisdiction over Count III of Walker's complaint. Hoffmann argues further that even if the court has jurisdiction, Walker cannot recover because Walker cannot prove actual damages from the alleged copyright infringement. Hoffmann claims Walker is only entitled to actual damages or a permanent injunction, neither of which is warranted under the facts of this case.

In Count III, Walker seeks to enjoin Hoffmann permanently from "reproducing, distributing, or preparing derivative works based upon the drawings referenced herein or any other original works that belong to Walker Manufacturing[.]" (Doc. No. 88, p. 9). Although Walker admits "registration is required under 17 U.S.C. § 411 to bring a suit for infringement," Doc. No. 111, p. 15, Walker nevertheless argues it is entitled to protection under the Copyright Act even without registration, and it can demonstrate actual damages and a threat of continuing infringement, entitling it to a permanent injunction. *Id.* (citing *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir.1994)).

There are several types of relief available for copyright infringement. A court may grant temporary and permanent injunctive relief, or may order the impoundment and disposition of infringing articles (photographs, copies, tapes, film negatives, etc.). 17 U.S.C. §§ 502, 503. In addition, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, ... or (2) statutory damages[.]" 17 U.S.C. § 504. Statutory damages are available for non-willful infringement of any one work in an amount from $500 to $20,000, "as the court considers just." 17 U.S.C. § 504(c)(1). For willful infringement, the cap on statutory damages is increased to $100,000, or where an infringer basically has clean hands, reduced to $200. 17 U.S.C. § 504(c)(2). Attorney's fees and costs also may be available to the prevailing party. 17 U.S.C. § 505.

■ In most cases, copyright registration is a prerequisite for bringing an action for infringement of a copyright. 17 U.S.C. § 411(a) ("no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title"). However, registration of a copyright is permissive; "[s]uch registration is not a condition of copyright protection." 17 U.S.C. § 408(a). Where the owner of an unregistered copyright seeks injunctive relief, as opposed to statutory damages, the Eighth Circuit Court of Appeals has held such an action is viable even in the absence of copyright registration. *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir.1994).[11]

In *Olan Mills*, the plaintiff/appellant Olan Mills, operator of portrait studios throughout the United States, sought, among other things, injunctive protection against future infringement of unregistered copyrighted photographs. The district court concluded it did not have jurisdiction to consider Olan Mills's request for a permanent injunction under 17 U.S.C. § 502(a), because the copyrights were not registered, and therefore Olan Mills "did not present a live controversy." *See Olan Mills, Inc. v. Linn Photo*, 795 F.Supp.

11. Contrary authority exists. *See Lofton v. Lofton*, 2000 WL 1508236, at *4 (N.D.Ill. Oct.10, 2000), for a listing of decisions holding registration is a jurisdictional prerequisite, but allowing a plaintiff "to amend the complaint to allege registration of the copyright if the plaintiff received a certificate of registration before the court ruled on a motion to dismiss the suit," as well as decisions taking a slightly broader view and "permitt[ing] an infringement action to proceed upon a showing that the plaintiff's application, deposit and fee payment have been received by the Copyright Office."

1423, 1429 (N.D.Iowa 1991). The Eighth Circuit disagreed, holding:

> Section 502(a) gives the district court the power to issue an injunction to prevent infringement of "a copyright." The power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action. *Pacific and Southern Co. v. Duncan*, 744 F.2d 1490, 1499 n. 17 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985). While registration is required under section 411 of the Copyright Act in order to bring a suit for infringement, infringement itself is not conditioned upon registration of the copyright. *See* 17 U.S.C. § 408(a) (registration is not a condition of copyright protection). Thus, a copyright holder can register a copyright and file suit after infringement occurs. The timing of registration only determines whether the copyright holder can recover statutory as opposed to actual damages. [Footnote omitted.] *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir.1990).

> In our view, Olan Mills presented a live controversy when it requested a permanent injunction against future infringement of its unregistered copyrighted photographs. Therefore, the district court had jurisdiction to consider Olan Mills' request.

> Courts have traditionally crafted broad injunctions to protect copyright holders, regardless of the registration status of the copyright. *See Pacific and Southern*, 744 F.2d at 1499.... When a copyright owner has established a threat of continuing infringement, the owner is entitled to an injunction regardless of registration. [*Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C.Cir.1990)] (citing *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir.1981), *rev'd on other grounds*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)).

*Olan Mills*, 23 F.3d at 1349. Because "Olan Mills presented evidence of Linn Photo's past infringement and of the substantial likelihood of future infringement," and because Olan Mills had no adequate remedy at law, the court held the district court "must consider Olan Mills' petition for injunctive relief." *Id.*

Thus, although lack of registration would prevent Walker from obtaining statutory damages, under *Olan Mills* it is clear injunctive relief is available if Walker meets its factual burden at trial. However, Hoffmann argues there is no threat of future infringement because it has returned all the RJM drawings to Walker, it "has not sold any crop sprayers prior to or since the commencement of this action," and "Walker has now sold the property rights it seeks to protect." Doc. No. 102 at 14. On November 20, 2001, Walker entered into an agreement with Hawkeye State Bank of Iowa City, Iowa ("HSB"), and other individuals, to transfer certain of Walker's assets to HSB in consideration for Walker's default on a loan made by HSB to Walker. The transferred assets specifically include the Walker trademarks and copyrights, and specifically exclude Walker's interest in this lawsuit. Hoffmann argues that because (a) Walker no longer owns the copyrights, (b) Walker is only entitled to injunctive relief and actual damages, and (c) Walker cannot show it has sustained any actual damages, therefore Hoffmann is entitled to summary judgment on the copyright infringement claim. Walker, on the other hand, argues it "can and has shown actual damages." Doc. No. 111 at 15–16.

To the extent Walker seeks statutory damages, the court finds Walker cannot prevail and Hoffmann's motion for sum-

mary judgment should be granted. Walker has not registered the copyrights, nor has it sought to register the copyrights since this action has been pending. In addition, the court finds that to the extent Walker seeks a permanent injunction prohibiting infringement of the copyrights, the issue has become moot by virtue of Walker's transfer of the copyrights to HSB. *See* 17 U.S.C. § 501.

█ However, the court finds a genuine issue of material fact exists as to whether, and to what extent, Walker has sustained actual damages from Hoffmann's alleged infringement of the Walker/RJM copyrights. Therefore, to that extent, Walker's copyright infringement claim remains viable. Accordingly, the court **grants in part and denies in part** Hoffmann's motion for summary judgment on Walker's copyright infringement claim.

### D. Breach of Fiduciary Duty Claim (Count VIII)

█ Hoffmann argues it is entitled to summary judgment on Walker's claim for breach of fiduciary duty "because Iowa does not recognize breach of fiduciary duty as an independent claim." Doc. No. 102 at 16 (citing *Clinton Land Co. v. M/S Assocs., Inc.*, 340 N.W.2d 232, 234 n. 1 (Iowa 1983); *Weltzin v. Nail*, 618 N.W.2d 293, 299 (Iowa 2000) ("A breach of fiduciary duty claim is not an individual tort in its own right at common law.")).

Hoffmann's argument fails to recognize that Walker has not set forth its breach of fiduciary duty claim as a separate and distinct tort. Walker begins its claim for breach of fiduciary duty by incorporating, by reference, "all previous paragraphs" of its complaint. Doc. No. 88, ¶ 72. The

Iowa Supreme Court noted a breach of fiduciary duty claim "is usually brought at law, bootstrapped by a tort like negligence or fraudulent misrepresentation." *Weltzin, id.* In this case, Walker bootstraps its breach of fiduciary duty claim by its other claims in this action. Hoffmann has not attempted to refute the existence of a fiduciary relationship between Walker/RJM and Hoffmann with respect to the trade secret information at issue in this case. The court finds the existence of a fiduciary relationship, and any extent to which the fiduciary duty arising from such a relationship was breached, to be questions for the jury, and **denies** Hoffmann's motion with respect to this claim.

### IV. CONCLUSION

Considering the facts in the light most favorable to Walker, as the nonmoving party, the court finds material issues of fact exist as to each of Walker's claims for relief **except** to the extent Walker seeks statutory damages or a permanent injunction on its copyright infringement claim. The court therefore **grants in part and denies in part Hoffmann's motion for summary judgment,** as set forth above.[12]

**IT IS SO ORDERED.**

---

**12.** The court notes the parties requested oral argument on Hoffmann's motion. Normally, the court grants requests for oral argument on summary judgment motions. However, in the present case, the court finds oral argu- ment would not assist the court in resolving the issues raised by the motion. Due to this fact, together with the court's extraordinary case load at present, the court denies the parties' request for oral argument.